1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| MARK A. GELAZELA,<br><br>                    Plaintiff,<br><br>            v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                    Defendants. | Case No. 1:22-cv-01539-ADA-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS,<br>RECOMMENDING THAT THIS ACTION<br>BE DISMISSED, WITH PREJUDICE<br><br>(ECF No. 14)<br><br>OBJECTIONS, IF ANY, DUE WITHIN<br>TWENTY-ONE DAYS |

        Mark Gelazela ("Plaintiff") is a former prisoner proceeding *pro se* and *in forma pauperis* in this action.

        As background, on October 8, 2021, Plaintiff filed the complaint commencing <u>Gelazela v. United States of America</u> ("<u>Gelazela I</u>"), E.D. CA, Case No. 1:21-cv-01499, ECF No. 1. The Court screened Plaintiff's complaint and found that it failed to comply with Federal Rules of Civil Procedure 8(a).  <u>Id.</u> at ECF No. 12.  The Court granted Plaintiff leave to amend, <u>id.</u>, and Plaintiff filed his First Amended Complaint on December 10, 2021, <u>id.</u> at ECF No. 13.  The Court screened Plaintiff's First Amended Complaint and allowed certain claims relating to the treatment he received (or failed to receive) for his knee to proceed past screening.  <u>Id.</u> at ECF Nos. 20 & 24.  The Court also found that certain other claims were unrelated and severed them. <u>Id.</u>  Plaintiff was given thirty days from the date this case was opened "to file an amended

1

complaint that **only** includes Claims III, Claim IV, and Claim V." <u>Id.</u> at ECF No. 24, p. 3 (emphasis added).  Claim III was for violation of Plaintiff's right to free exercise of religion, Claim IV was for violation of Plaintiff's right to access the courts, and Claim V was for violation of Plaintiff's right to due process. <u>Id.</u> at ECF No. 13, pgs. 16-19.

On December 19, 2022, Plaintiff filed his Second Amended Complaint in this action (ECF No. 14), which is now before this Court for screening.  The Court has reviewed Plaintiff's Second Amended Complaint, and for the reasons described in this order, will recommend that this action be dismissed, with prejudice.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.    SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u> at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  <u>Iqbal</u>, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.        SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

The incidents occurred at Mendota Federal Correctional Institute.[1]

Plaintiff was fully exonerated in court of any wrongdoing in his criminal case, but the exoneration occurred after the verdict, so this did not prevent Plaintiff from being wrongfully incarcerated pending appeal for a new trial under "rule 33."

Defendant Acting Warden Lepe admitted to Plaintiff via email that Plaintiff's first request for compassionate release in April of 2020 was "lost." Plaintiff was asked to resubmit the request three months later, which he did on July 13, 2020. This contributed to Plaintiff contracting COVID and not being able to get knee surgery before permanent damage occurred. This is a denial of Plaintiff's due process rights, and it makes the United States liable for violation of a strict liability tort, a Prima Facie tort, and negligence under the Federal Tort Claims Act ("FTCA")/California Tort Claims Act ("CTCA").

Defendant Warden Douglas White was the official in charge during the events described, except where referenced. Plaintiff attempted to contact defendant White regarding the abuses/neglect several times through administrative channels and was ignored or dismissed (specifically in emails on October 20, 2020, November 6, 2020, May 7, 2021, as well as in his compassionate release packages that were delivered by certified mail on May 21, 2021). Related to this, defendant Blocher was answering the Warden's emails for him at least in part (he admitted this to Plaintiff directly in conversation, and Plaintiff references this conversation in emails to the Warden dated October 20, 2020, and May 25, 2021). Defendant Blocher also ignored, dismissed, or worked actively to derail Plaintiff's requests both directly and through the aforementioned emails, each ignoring the Plaintiff's administrative remedy requests

---

[1] Plaintiff includes numerous allegations related to the treatment he received (or failed to receive) for his knee. As discussed above, Plaintiff's claims related to the treatment he received for his knee were addressed in Gelazela I. To the extent Plaintiff is attempting to re-assert those claims in this action, the Court RECOMMENDS that they be dismissed because Plaintiff was not given permission to re-assert them in this severed action and Plaintiff provides no explanation as to why he should be allowed to re-assert them.

throughout 2020 and 2021.

Plaintiff has a long and virulent history of upper respiratory infections, and he has had two parts of his immune system removed.  Thus, he has a perpetually low white blood cell count. Defendant Lehman flatly refused to even accept Plaintiff's BP-8 CARES Act release package, military medical records, and Veterans Affairs medical records, until two months after Plaintiff complained to the Warden in email(s).  Plaintiff's requests for his own medical records from Federal Correctional Institution Mendota ("FCI Mendota") were ignored for months.  It was not until Plaintiff pressed other Bureau of Prison ("BOP") employees to testify to the truth about some of the corruption that Acting Warden Lejeune (defendant White had retired) was convinced to force defendant Lehman to allow Plaintiff to finally submit his CARES Act package and attending medical records.  It should not have taken over a year for Plaintiff's CARES Act Package/requests for release to even be accepted for review.  This violated Plaintiff's due process rights, and it also makes the United States liable under the FTCA/CTCA given that this is an intentional tort, a strict liability tort, a Prima Facie tort, and negligence.

Someone at FCI Mendota also fraudulently backdated a made-up, September 8, 2020 denial to one of Plaintiff's initial requests for compassionate release/CARES Act release and sent it to the regional BOP.  Three aforementioned FCI Mendota staff members have stated that they are willing to testify to this.  Plaintiff believes that defendant Blocher is the guilty party. This caused further delay in Plaintiff's release, resulting in damages.  This is a violation of Plaintiff's due process rights, and it also makes the United States liable under the FTCA/CTCA given that this is an intentional tort, a Prima Facie tort, and negligence.

Plaintiff was also denied the Eucharist for over a year and four months (from early April of 2020 to the time of discharge on September 14, 2021), despite repeated pleadings, and he is a practicing Catholic who had been accepted to become a Priest before being wrongfully incarcerated.  This is a violation of Plaintiff's free exercise rights, and it also makes the United States liable under the FTCA/CTCA given that it is an intentional tort, a strict liability tort, a Prima Facie tort, and negligence.

Plaintiff's attempts to pursue legal action were knowingly subjugated at every

4

opportunity.  Inmates were continually denied access to the law library by defendant White, making it impossible to provide citations.  Every time an inmate was caught with contraband, defendant White and his staff would punish everyone by taking away their access to the law library (which was only available on computer) and the chapel.  They would also shut off the TVs, which were the only source of anti-recidivism activities for Earned Time Credits (which are relevant for an application under the First Step Act).  This occurred often, and Plaintiff's complaints were ignored.  This is a violation of Plaintiff's right to access the courts and due process rights.  It also makes the United States liable under the FTCA/CTCA, given that this violation is an intentional tort, a strict liability tort, a Prima Facie tort, and negligence.

Defendant White and other defendants were extremely uncooperative and deliberate in their denial of these rights.  During early 2021[2] defendant Lehman even refused to sign something as simple as an *in forma pauperis* form, even though Plaintiff showed her a section of the federal rules of criminal procedure stating that the Warden or another officer must file a certificate setting forth the amount of money or securities on deposit in Plaintiff's account.  She also refused to accept Plaintiff's CARES Act submission and BP-8 on May 7, 2021, so Plaintiff had to wait months for his complaint to reach the Warden.

Additionally, Plaintiff filed a "2241" case in the Eastern District regarding these abuses, but the Court ultimately advised him to submit a civil complaint instead.  However, the Court did issue an order expediting Plaintiff's petition and emergency motion to compel back to the litigation coordinator at FCI Mendota.  However, defendant White and other Defendants promptly ignored the order.  This is a violation of Plaintiff's right to access the courts and due process rights.  It also makes the United States liable under the FTCA/CTCA given that this violation is an intentional tort, a strict liability tort, a Prima Facie tort, and negligence.

Additionally, all these delays caused Plaintiff to remain incarcerated, get COVID, and almost die.  Had defendant Lehman not repeatedly willfully refused his package, Plaintiff would have been released to the safety of home confinement before the massive COVID

---

[2] It is not clear if Plaintiff is referring to 2021 or 2022.  Plaintiff alleges that it occurred in "20212."  (ECF No. 14, p. 10).

outbreak that occurred at the FCI Mendota camp on August 25, 2021.[3]

Plaintiff brings a claim for violation of his right to free exercise of religion, a claim for violation of his right to access the courts, and a claim for violation of his right to due process.

### III.   ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A.   Bivens

Based on the case Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), courts have found that individuals may sue federal officials for damages for constitutional violations under certain circumstances.  A Bivens action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983.  Hartman v. Moore, 547 U.S. 250 (2006).  The basis of a Bivens action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right.  Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, 909 (9th Cir. 2003).  "To state a claim for relief under Bivens, a plaintiff must allege that a federal officer deprived him of his constitutional rights."  Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing Schearz v. United States, 234 F.3d 428, 432 (9th Cir. 2000).  A Bivens claim is only available against officers in their individual capacities.  Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996).  "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*."  O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir. 1988).

Plaintiff must allege facts linking each named defendant to the violation of his rights.  Iqbal, 556 U.S. at 676; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297

---

[3] Plaintiff also includes numerous allegations regarding how staff at FCI Mendota failed to protect him from COVID, as well as allegations regarding the conditions at the Medium Security C1 Unit.  However, Plaintiff's Eighth Amendment, Fourteenth Amendment, and FTCA claims regarding COVID and the conditions at the Medium Security C1 Unit were included in Claim VI, and Plaintiff was ordered to file Claim VI in a separate action, which he did.  See Gelazela I, ECF No. 13 pgs. 19-21; ECF No. 24, p. 3; & Gelazela v. United States of America, E.D. CA, Case No. 1:22-cv-01540, ECF No. 14.  To the extent Plaintiff is attempting to re-assert these claims in this action, the Court RECOMMENDS that these claims be dismissed because Plaintiff was not given permission to re-assert these claim in this action and Plaintiff provides no explanation as to why he should be allowed to re-assert them.

F.3d 930, 934 (9th Cir. 2002).  The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678-79.

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

However, not all constitutional cases against federal officers for damages may proceed as Bivens claims.  In the recent case of Egbert v. Boule, 142 S. Ct. 1793, the United States Supreme Court explained the following steps for evaluating a constitutional claim for damages against a federal official: "To inform a court's analysis of a proposed *Bivens* claim, [The Supreme Court's] cases have framed the inquiry as proceeding in two steps.  First, we ask whether the case presents a new *Bivens* context—i.e., is it meaningful[ly] different from the three cases in which the [Supreme] Court has implied a damages action.  Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed.  If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a Bivens remedy."  Egbert, 142 S. Ct. at 1803 (alteration in original) (citations and internal quotation marks omitted).  These steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  Id. (internal quotation marks omitted).

Here, the Court finds that Plaintiff's Bivens claims may not proceed because they arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages

\\\

\\\

action to proceed.[4]

### 1.  New Context Analysis

A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  Ziglar v. Abbasi, 137 S. Ct. 1843, 1859 (2017).  The Supreme Court has declined "to create an exhaustive list of differences that are meaningful enough to make a given context a new one," id. at 1859-60, but provided the following instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Abbasi, 137 S. Ct. at 1860.

As to the three cases that the Supreme Court has allowed to proceed under Bivens, the Supreme Court has summarized those three cases:

> In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim.  The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.

Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020) (citations shortened).

In this case, Plaintiff brings due process claims, free exercise claims, and access to courts claims against prison officials.  These claims are not the same, or even similar, to the cases in which the Supreme Court has allowed a Bivens claim to proceed.  Accordingly, the Court finds that Plaintiff's Bivens claims arise in a new context.

---

[4] To the extent Plaintiff is attempting to bring Bivens claims against defendant United States, defendant FCI Mendota, and defendant BOP, the Court finds that these claims fail because, as discussed above, a Bivens claim is only available against officers in their individual capacities.

1          *2.  Special Factors Analysis*

2          Once the Court finds that claims arise in a new context, the Court must apply a "special

3    factors" analysis to determine whether "special factors counsel hesitation" in expanding <u>Bivens</u>

4    to the action.  <u>Abbasi</u>, 137 S. Ct. at 1857, 1875.  In this analysis, the Court looks to "whether

5    there is any rational reason (even one) to think that *Congress* is better suited to weigh the costs

6    and benefits of allowing a damages action to proceed."  <u>Egbert</u>, 142 S. Ct. at 1805 (citation and

7    internal quotation marks omitted).[5]  "[I]n most every case" the Court should defer to Congress

8    and find that "no *Bivens* action may lie."  <u>Id.</u> at 1803.

9          "If there are alternative remedial structures in place, that alone, like any special factor,

10   is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action."  <u>Id.</u>

11   at 1804 (citations and internal quotation marks omitted).

12         As there are alternative remedial structures in place, the Court finds that there is at least

13   one special factor indicating that the Judiciary is at least arguably less equipped than Congress

14   to weigh the costs and benefits of allowing damages actions to proceed on Plaintiff's <u>Bivens</u>

15   claims.

16         The Bureau of Prisons' administrative remedy program provides an alternative remedial

17   structure.  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 74, (2001) ("Inmates in respondent's

18   position also have full access to remedial mechanisms established by the BOP, including …

19   grievances filed through the BOP's Administrative Remedy Program (ARP.  See 28 CFR §

20   542.10 (2001) (explaining ARP as providing 'a process through which inmates may seek

21   formal review of an issue which relates to any aspect of their confinement').");  <u>Egbert</u>, 142 S.

22   Ct. at 1806 ("In *Malesko*, we explained that *Bivens* relief was unavailable because federal

23   prisoners could, among other options, file grievances through an Administrative Remedy

24   Program.") (internal quotation marks omitted);  <u>Hoffman v. Preston</u>, 2022 WL 6685254, at *1

25   (9th Cir. Oct. 11, 2022) ("Hoffman's complaint alleges that a prison correctional officer

26   intentionally created the risk that another prisoner would assault Hoffman by publicly labeling

27   _____

28         [5] The Court notes that <u>Egbert</u> changed the relevant inquiry.  <u>Mejia v. Miller</u>, 61 F.4th 663, 667 (9th Cir.
     2023) ("The question is no longer whether the Judiciary is well suited, but whether Congress is better suited.").

him as a snitch and offering prisoners rewards.  The Supreme Court's decision in *Egbert v. Boule* precludes recognizing a *Bivens* remedy for these allegations.  Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' *Egbert*, 142 S. Ct. at 1803, why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (alteration in original).

While the Bureau of Prisons' administrative remedy program does not provide Plaintiff with complete relief, the question before the Court is not whether existing remedies provide complete relief.  Egbert, 142 S. Ct. 1793, 1804.  "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy."  Id. (citations and internal quotation marks omitted).  And, as discussed above, the existence of alternative remedial structures is a rational reason why Congress has not authorized a damages remedy for Plaintiff's Bivens claims.

Finally, the Court notes that Plaintiff is no longer incarcerated (see ECF No. 14, p. 1), and that while Plaintiff seeks money damages (id. at 19), he does not seek injunctive relief.

Therefore, based on the foregoing, the Court will recommend that Plaintiff's Bivens claims be dismissed, with prejudice, for failure to state a claim.

### B.  Federal Tort Claims Act

The Federal Tort Claims Act provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The United States is not liable under the FTCA for constitutional tort claims.  FDIC v. Meyer, 510 U.S. 471, 478 (1994).  The FTCA "makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances.'"  United States v. Olson, 546 U.S. 43, 46 (2005) (emphasis removed) (quoting 28 U.S.C. § 2674).  "The law of the place in § 1346(b) has been construed to refer to the law of the state where the act or omission occurred.  Thus, any duty that the United States owe[s] to plaintiff[] must be found in California state tort law."  Delta Sav. Bank v. United States, 265 F.3d 1017, 1025 (9th Cir. 2001) (citations and internal quotation marks omitted).

10

As to Plaintiff's Federal Tort Claims Act claims, the Court finds that they should be dismissed because Plaintiff's complaint once again fails to comply with Rule 8(a) and because they fail to state a claim.

As set forth above, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint is not required to include detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77.

In screening Plaintiff's First Amended Complaint in Gelazela I, the Court found that Plaintiff's FTCA claims failed. In so finding, the Court noted that:

> Plaintiff's complaint is twenty-four pages and appears to include allegations stemming from when he first arrived in prison until when he was released, a period of approximately a year and eight months. Moreover, Plaintiff sues numerous individuals, and also complains about various incidents without naming responsible individuals. Additionally, while Plaintiff lists six separate claims and lists the United States as a defendant in each, none of his claims are for violation of the Federal Tort Claims Act. Thus, it is not clear how many separate Federal Tort Claims Act claims Plaintiff is attempting to bring based on the conduct alleged in the complaint

Gelazela I, ECF No. 20, p. 21 & ECF No. 24.

Plaintiff's Second Amended Complaint suffers from many of these same defects, and in fact, the amendment made some of the defects worse. Plaintiff's complaint is twenty pages, is largely in narrative format, includes legal argument, includes numerous irrelevant factual allegations, and once again includes allegations stemming from when he first arrived in prison until when he was released.

Additionally, once again, none of Plaintiff's listed claims are for violation of the Federal Tort Claims Act. Instead, in the title of each of his three claims, Plaintiff identifies a

constitutional violation.  And, as discussed above, Plaintiff fails to state a claim for violation of his constitutional rights and the United States is not liable under the FTCA for constitutional tort claims.  However, despite not listing a single claim for violation of the FTCA, on over thirty occasions throughout his complaint Plaintiff asserts a violation of the Federal Tort Claims Act.  Therefore, it is once again not clear how many separate Federal Tort Claims Act claims Plaintiff is attempting to bring.

Moreover, at times, Plaintiff still fails to identify responsible individuals.  As one example, Plaintiff attempts to assert his claim for violation of his religious rights against all defendants.  (ECF No. 14, p. 17).  However, he once again does not name any responsible individuals.  Instead, he simply alleges that he was denied the Eucharist for over a year and four months "despite repeated pleadings."  (ECF No. 14, p. 9).

Finally, Plaintiff fails to identify the facts supporting each of his three listed claims.  Instead, he incorporates every factual allegation in his complaint by reference, even though many are not relevant to the claim.

Accordingly, the Court finds that Plaintiff's complaint once again fails to comply with Rule 8(a).  McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) ("[A] court may dismiss a complaint for failure to comply with Rule 8(a) if it is "argumentative, prolix, replete with redundancy, and largely irrelevant."); Pinzon v. Jensen, 2009 WL 231164, at *2 (E.D. Cal., Jan. 30, 2009) ("Although Plaintiff attempts to allege many causes of action and provides a description of his alleged experiences, his narrative-style complaint is insufficient to state legally cognizable causes of action.  It is Plaintiff's burden, not that of the court, to separately identify claims and state facts in support of each claim."); Saunders v. Saunders, 2009 WL 382922, at *2 (E.D. Cal., Feb. 13, 2009) ("A complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a 'short and plain statement of the claim' may be dismissed for failure to satisfy Rule 8(a)."). [6]

---

[6] The Court also notes that Plaintiff was not given permission to bring any claims under the Federal Tort Claims Act in this action, let alone over thirty.  While the Court ultimately granted Plaintiff's request to sever unrelated claims instead of dismissing them, limitations were placed on the claims Plaintiff could bring in the severed cases.

1    For similar reasons, the Court also finds that Plaintiff fails to state an FTCA claim.  As

2 discussed above, Plaintiff only includes three claims, and in the title of each claim, Plaintiff

3 only lists a constitutional violation.  In each claim Plaintiff also alleges that the United States

4 violated "common law torts."  (ECF No. 14, pgs. 17-19).  However, the United States is not

5 liable under the FTCA for constitutional tort claims.  Moreover, Plaintiff fails to identify any

6 specific California state tort law that the United States violated in these claims.

7    The Court has previously informed Plaintiff of these same defects, and he has not

8 corrected them.  <u>Gelazela</u> I, ECF No. 20, p. 21 ("Moreover, most of the claims that Plaintiff

9 lists are for constitutional violations, and, as the Court informed Plaintiff previously, '[t]he

10 United States is not liable under the FTCA for constitutional tort claims.' (ECF No. 12, p. 2 n.

11 1).  And, Plaintiff fails to identify any California state tort law that the United States violated.

12 Instead, in two of the six claims, Plaintiff states that the behavior of certain defendants violated

13 'Common Law Torts.'"). (alteration in original).    This is Plaintiff's third complaint, and he

14 continues to add general FTCA claims as to any and all underlying conduct without regard to

15 the repeated instructions as to how to state a viable claim.

16    Moreover, while Plaintiff specifically identifies certain torts in the facts section of his

17 complaint, Plaintiff does not specifically allege what any specific defendant did that violated a

18 state tort law that would be applicable under the FTCA.  He generally alleges that his

19 constitutional claims also are tort claims, stating things such as "[t]his is a violation of the

20 Plaintiff's Free Exercise of Religion and it also makes the U.S. liable under the

21 FTCA/CTCA…."  (ECF No. 14, p. 9).  However, it is not the case that constitutional claims are

22 also tort claims, and he does not set forth facts establishing as such.  For example, he alleges

23 that failing to provide him with the Eucharist is an intentional tort, and he specifically identifies

24 _____

25    In <u>Gelazela I</u>, the Court screened Plaintiff's complaint, and instead of dismissing unrelated claims,
severed them at Plaintiff's request.  <u>Id.</u> at ECF Nos. 20 & 24.  Plaintiff was given thirty days from the date this
26 case was opened "to file an amended complaint that **only** includes Claims III, Claim IV, and Claim V."  <u>Id.</u> at ECF
No. 24 (emphasis added).  Claim III was for violation of Plaintiff's right to free exercise of religion, Claim IV was
27 for violation of Plaintiff's right to access the courts, and Claim V was for violation of Plaintiff's right to due
process.  <u>Id.</u> at ECF No. 13, pgs. 16-19.  The Court did not give Plaintiff permission to bring Federal Tort Claims
28 Act claims, which cannot be based on violation of a constitutional right.  Additionally, Plaintiff did not ask for
permission to bring such claims.

1  the tort of intentional infliction of emotional distress, but he does not allege the elements of this
2  claim.[7]

3  Accordingly, the Court also finds that Plaintiff fails to state an FTCA claim.

4  **IV.    CONCLUSION AND RECOMMENDATIONS**

5  The Court recommends that this action be dismissed, without granting Plaintiff further
6  leave to amend.  There is no <u>Bivens</u> claim for any of the constitutional claims Plaintiff is
7  attempting to bring, and Plaintiff cannot cure this defect with amendment.  Moreover, despite
8  the Court identifying the deficiencies and previously granting Plaintiff leave to amend, Plaintiff
9  once again fails to comply with Rule (8)(a) and he also fails to state any claims.  Thus, the
10  Court finds that leave to amend would be futile.

11  Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

12  1.  This action be dismissed, with prejudice;

13  2.  Plaintiff's request for appointment of pro bono counsel be DENIED;[8] and

14  3.  The Clerk of Court be directed to close this case.

15  These findings and recommendations will be submitted to the United States district
16  judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within
17  twenty-one (21) days after being served with these findings and recommendations, Plaintiff
18  may file written objections with the Court.  The document should be captioned "Objections to
19  Magistrate Judge's Findings and Recommendations."

20  \\\
21  \\\
22  \\\

---

24  [7] "The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by
25  the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress;
(2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the
emotional distress by the defendant's outrageous conduct."  <u>Sanders v. City of Fresno</u>, 551 F.Supp.2d 1149, 1179-
26  80 (E.D. Cal. 2008) (citing <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal.4th 965, 1001 (1993)).
27  [8] Plaintiff's First Amended Complaint includes a request for appointment of pro bono counsel.  (ECF No.
14, p. 20).  The Court has reviewed the record in this case, and the Court is unable to make a determination that
Plaintiff is likely to succeed on the merits of his claims (and in fact, has found that Plaintiff's <u>Bivens</u> claims fail).
28  Moreover, it appears that Plaintiff can adequately articulate his claims.  Accordingly, the Court is recommending
that Plaintiff's request for appointment of pro bono counsel be denied.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **May 17, 2023**          /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE